## AMERICAN TEXTILE COMPANY, INC. *vs.* CATHERINE DEANGELO.

NOVEMBER 13, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J.   This is an employer's petition brought under the workmen's compensation act, general laws 1938, chapter 300, to review a preliminary agreement between the parties providing for the payment of compensation to the employee for total incapacity resulting from an injury received by accident arising out of and in the course of her employment with petitioner.   After a hearing in the superior court a justice thereof entered a decree finding that respondent's incapacity from such accident had entirely terminated and that compensation payments under the preliminary agreement should be suspended forthwith.   From the entry of that decree she duly prosecuted her appeal to this court.

It appears from the evidence that respondent's work for petitioner required her to mend lace and that while performing her duties she sat at an electric sewing machine. On January 23, 1951 while thus employed a metal carriage fell a short distance from an overhead rail and struck her a glancing blow on the left frontal region of her forehead near the hairline.   The blow, which apparently left no serious objective marks, partially stunned her but did not cause her to become unconscious.   After resting she worked the remainder of that day and for a portion of the three following days.   During this time she was examined and treated by the plant nurse and doctor.   Thereafter she ceased work entirely, has not been employed, and has been attended by her own physician, who testified in substance that he sees her frequently, checks her weight and blood pressure, and prescribes sedatives for her.   It is his opinion that she is totally incapacitated for work.   In cross-examination, however, he did state that she should be "reassured that there isn't too much wrong in reference to her physical condition."

The respondent testified generally that since the accident she has suffered from headaches, a buzzing in her left ear,

occasional dizziness, insomnia, nervousness, and menstrual difficulties. She claims that she did not have these conditions prior to the accident and that she is unable to do any work. The petitioner in writing and orally has offered her work, either at the job she was doing when injured or at such work as she feels able to do, for the same pay she was receiving at the time of the accident.

The respondent has been examined by several physicians and in particular by Doctors Wilfred Pickles and Edmund B. Curran, both of whom testified for petitioner. X-ray pictures taken of respondent's head were negative and those of her neck showed a slight degree of osteoarthritis. Doctor Pickles last examined her on May 10, 1951 and Dr. Curran on July 25, 1951. The hearing in the superior court was in June 1952.

After receiving respondent's history and making his examination Dr. Pickles' opinion of her condition was as follows: "I believe that this woman suffered some degree of congestion of the brain at the time of the accident, together with a wrench of the neck muscles, and that the neck symptoms are residuals of this wrenching injury, and should be expected to clear with the passage of time. I believe that she is now in such a condition that she would be benefited by a return to work." He further stated that he did not find anything wrong with her. Doctor Curran also received a history of the accident before examining respondent and he diagnosed her present difficulty as an "Early menopausal syndrome" gynecological in nature and unrelated in any way to her accident. He was likewise of the opinion that she should work and return to her job, which had been described to him.

It is respondent's contention that there was no legal evidence of probative value before the superior court to the effect that in June 1952 she was no longer incapacitated and was able to return to work. That contention is based solely on the fact that the examinations by Dr. Pickles and Dr. Curran were made approximately a year before they

gave their opinions in the superior court as to respondent's condition with reference to her ability to work, and that as a matter of law the examinations antedated to such an extent the giving of their opinion testimony that it had, in the circumstances, no probative value and should have been disregarded instead of relied on by the trial justice.

It is unquestioned that in a petition of this nature the employer as petitioner has the burden of proof to establish the facts necessary to maintain its petition. Whether it has sustained that burden is primarily to be determined by the trial justice. In a case of this type he passes upon the weight of the evidence; we do not do so. The evidence in question here was admitted in the superior court without objection. It is our judgment that we should not hold as a matter of law that an opinion given by a medical witness and based on an examination of an injured person made about a year prior to the date the witness testified must *ipso facto* be of no legal or probative value. In the circumstances here, the weight of such testimony undoubtedly could properly be considered by the trial justice in connection with the nature of the accident, the kind of injury involved, and all other pertinent facts and conditions relating to the question before the court.

It is conceivable, however, that a case might arise in which the lapse of time between the medical examination and the giving of such an opinion together with other circumstances might justify an appellate court in holding that the opinion was valueless as probative evidence on the issue before the court. But we are not faced here with that situation and therefore we are unable to agree with respondent's above contention. In our judgment on the record before us there was legal evidence to support the findings of the trial justice.

In pressing her contention respondent relies largely on the holding in *Walter Marshall Spinning Corp. of R. I. v. Merola,* 78 R. I. 20. While the issue in that case was respondent's ability to work, and this court held that there

was no legal evidence to support the decree of the superior court that such respondent had recovered from her injury, the decision was not based, as respondent urges, on the fact that because physicians had examined the employee over six months before the hearing their testimony did not constitute credible evidence on the point in issue.

The question in that case was whether respondent had a traumatic cerebral syndrome at the time of the hearing in the superior court in May 1950. We stated in our opinion at page 25: "That she did not have it in November 1949 according to the uncontradicted testimony of Dr. Pickles is of no consequence *in view of his admission that it could have manifested itself after he had examined her.*" Plainly the only ground for our holding in the cited case was the admission of the doctor, which we have italicized above, that such syndrome could have manifested itself subsequent to his examination. In those circumstances his testimony as to respondent's condition in November 1949 could not properly be considered as legal evidence to support the decree in view of another doctor's evidence which was not contradicted. The latter examined respondent subsequently and established the existence of such an injury at the time of the hearing in May 1950. In the instant case the doctor's pertinent testimony contained no such admission or qualification.

In view of our determination that there was legal evidence which supported the findings of the trial justice contained in the decree now under review, the provision of G. L. 1938, chap. 300, art. III, §6, to the effect that in the absence of fraud such findings of fact shall be conclusive, becomes applicable.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Carroll & Dwyer, Edward F. J. Dwyer,* for petitioner.

*Carl Testa, George Ajootian,* for respondent.